# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN

SEAN ROBILLARD, individually and on behalf of all others similarly situated,

    Plaintiff,

        v.

JARED HOY, in his individual capacity and official capacity as Secretary of the Wisconsin Department of Corrections,

    Defendant.

No.

## CLASS ACTION COMPLAINT

Plaintiff, Sean Robillard, individually and on behalf of others similarly situated, complains against Jared Hoy, in his individual capacity and his official capacity as Secretary of the Wisconsin Department of Corrections, as follows:

### Nature of the Case

1. This case arises under 42 U.S.C. §1983 and asserts violations of Plaintiff's rights under the Fourth Amendment of the United States Constitution.

2. Plaintiff challenges the constitutionality of the policies and practices of the Wisconsin Department of Corrections ("WDOC" or "the Department") related to "parole holds" placed on individuals on extended supervision (also called parole). The challenged policies and practices result in the frequent and repeated wrongful imprisonment of persons on extended supervision.

3. In particular, Plaintiff alleges that systemic deficiencies in the Department's policies and practices have caused the Department's Electronic

Monitoring Center to issue arrest warrants for individuals on extended supervision who are suspected of having tampered with their GPS monitors without taking reasonable measures to confirm whether the suspected tampering alert is related to an equipment malfunction.

4. In this case, the Department's practices and policies resulted in the detention of Plaintiff Sean Robillard in jail for two days and nights due to a malfunctioning GPS device.

5. A "parole hold" occurs when the Department asks another law enforcement agency to detain a parolee in custody, typically in a county jail, in anticipation of potential parole revocation proceedings.[1]

6. The Department is or should be aware that its GPS monitoring equipment suffers from well-known and recurrent technical flaws and malfunctions that result in the issuance of false alerts of suspected tampering. Despite such knowledge, the Department has failed to institute proper procedures to ensure that individuals

---

[1] Wis Stat. §328.27(5) grants the Department authority to "detain an offender on parole, extended supervision, or on felony probation with an imposed and stayed prison sentence in a state correctional institution including a probation and parole holding facility pending revocation proceedings." According to the WDOC website,

> An offender may be placed on a probation and parole hold in a county jail or detention facility for one of the following purposes:
> a. for investigation of alleged violation of a rule or condition of supervision;
> b. after an alleged violation to determine whether to commence revocation proceedings;
> c. for disciplinary purposes;
> d. to prevent a possible violation by the offender;
> e. pending placement in a program as an alternative to revocation

*See* https://doc.wi.gov/Pages/DataResearch/HoldsShortTermSanctionsDB.aspx. (last visited August 23, 2024)

whose monitors malfunction are not arrested, incarcerated and placed on parole holds.

7. The standard for a parole hold to be valid is reasonable suspicion of a parole violation. Given that alerts of suspected tampering routinely occur due to malfunctioning GPS equipment, an alert, standing alone, does not create reasonable suspicion of a parole violation.

8. Plaintiff, individually and on behalf of the class he seeks to represent, seeks a declaration that the Department's policy is unconstitutional both on its face and as applied to him and an injunction prohibiting Defendant from continuing to enforce the policy. The named Plaintiff also seeks damages for the harm he has suffered as a result of the Department's application of the policy to him.

## Jurisdiction and Venue

9. Jurisdiction for Plaintiff's claims is based on 28 U.S.C. §§1331 and 1343(a).

10. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because a substantial part of the events giving rise to the claim occurred within this district.

## The Parties

11. Plaintiff Sean Robillard is a 56-year-old resident of Beaver Dam, Wisconsin. He is on extended supervision under the supervision of the Wisconsin Department of Corrections and Community Supervision after being convicted in 2017 of three counts of possession of child pornography (Wis. Stat. §948.12).

12. Defendant Jared Hoy is Secretary of the Wisconsin Department of Corrections. In that role, he has final responsibility for maintaining and

implementing the Department's polices. He is sued in his official and individual capacities.

## The Challenged Policy

13. The Department operates an Electronic Monitoring Center in Madison, Wisconsin (the "Center" or "Monitoring Center").[2]

14. The Center monitors the GPS signals of individuals under the Department's supervision to determine when there is a loss of signal, suspected tampering with the device, the battery runs low or the parolee enters a so-called exclusion zone. Whenever one of these events occurs, the Monitoring Center receives a notification (also known as an "alert") from the parolee's GPS device.

15. Typically, when an alert is received, the Electronic Monitoring Center first attempts to call the parolee and explain that the GPS signal has been lost and try to regain a lost signal, including by asking the parolee to, among other things, step outside his home, walk around outside, or drive around in his car.

16. Despite these efforts, sometimes no signal is regained, in which case the Center will, during the normal work week of Monday through Friday, issue a warrant and contact the parolee's supervising parole officer to report the matter so that the parole officer can check on the registrant and their GPS bracelet to make sure the bracelet is intact.

17. In such cases, the parole officer typically calls the parolee to inform him or her that there is a problem with the GPS device. The parole officer investigates

---

[2] The official website of the Department's monitoring center can be found at https://doc.wi.gov/Pages/AboutDOC/CommunityCorrections/MonitoringCenter.aspx

whether the parolee has tampered with the GPS device or otherwise deliberately interfered with the transmission of a GPS signal. Some parole officers ask the parolee to send a photo of the GPS device to the parole officer to show that it is still intact and on the parolee's ankle. If the parole officer determines that the signal loss resulted from an equipment problem rather than deliberate interference by the parolee, the officer cancels the warrant and informs the parolee that the device will need to be repaired or replaced.

18. The parole officer then places a work order with JusticePoint, the contractor the state employs to repair malfunctioning GPS devices. To arrange an appointment between JusticePoint and the parolees, either the parolee will call JusticePoint or a JusticePoint employee will contact the parolee.

19. The lost-signal policy is different on the weekends. On the weekends, if the Monitoring Center receives an alert of a lost signal, it seeks to work out the problem with the parolee over the phone. If the problem cannot be fixed, the Monitoring Center issues a warrant and sends a notice to the parole officer. But because parole officers are not on duty during the weekends, no one from the parole department investigates whether the alert resulted from an equipment malfunction. Thus, law enforcement agencies automatically make an arrest based on the issuance of the warrant.

20. Local law enforcement agencies do not inquire about the parolee's GPS device or undertake any investigation to determine whether the device has been tampered with. Per the warrant, the local agency simply arrests the parolee and

takes him or her to jail where he or she is processed and booked and remains until he or she is released by the parole officer. This often results in a parolee being held in custody until Monday morning when the parole officer typically returns to work.

21. The parolee is typically released from custody only after JusticePoint repairs or replaces the monitoring device.

**There Is a Well-Documented History of Equipment Malfunctions**

22. GPS monitors are often faulty. Devices break. Devices malfunction. Batteries die. In addition, the devices often issue false alerts, and the connection to GPS networks is often disrupted. Weather conditions and blackouts can cause the loss of signal that can register as a violation.

23. As a direct result of the challenged policy and the commonplace nature of faulty signals, individuals on supervision for sex offenses are routinely arrested and forced to remain in lock-up on parole holds for several days through no fault of their own.

24. Several articles have been written about false alerts that have landed offenders in jail. *See*, e.g., Riley Vetterkind, *Wisconsin doubles GPS monitoring despite five years of malfunctions, unnecessary jailings*, Wisconsin Watch, March 4, 2018.[3]

25. The Department knows or should know how often false alerts occur and how often GPS devices malfunction and need to be replaced.

**Facts Relevant to Named Plaintiff Sean Robillard**

---

[3] https://www.wisconsinwatch.org/2018/03/wisconsin-doubles-gps-monitoring-despite-five-years-of-malfunctions-unnecessary-jailings/

26. Plaintiff Sean Robillard is a 56-year-old resident of Beaver Dam, Wisconsin. He was convicted in 2017 of three counts of possession of child pornography (Wis. Stat. §948.12). He was released from prison in July 2020 and is on extended supervision until July 2030.

27. He is required to wear a GPS monitor for life pursuant to Wis. Stat. 301.48(2)(a)(7). This statute provides that the WDOC "shall maintain lifetime GPS tracking" of a person who "on or after January 1, 2008" becomes the subject of a "special bulletin notification" pursuant to Wis. Stat 301.46(2m)(am). 301.48(2)(a)(7). Wisconsin law defines a "special bulletin notification" ("SBN") offender as an individual who has "been convicted 2 or more times, including convictions that were part of the same proceeding, occurred on the same date, or were included in the same criminal complaint, for a sex offense." 301.46 (2m)(am).

28. Robillard currently lives in an apartment by himself in Beaver Dam, Wisconsin. For the past two years, he has been employed full time as an electrical assembler. He visits with his parents in Appleton, Wisconsin, most Saturdays.

29. On Saturday, April 27, 2024, at approximately 9:00 a.m., Robillard was awoken by a knock on his apartment door in Beaver Dam, whereupon three or four police officers from the Beaver Dam police department informed him that there was a problem with his GPS monitor, in particular a "tamper alert," and that a warrant had been issued for his arrest. The officers informed him that he would be taken to the Dodge County Jail.

7

Case 2:24-cv-01077-JPS    Filed 08/26/24    Page 7 of 13    Document 1

30. Plaintiff Robillard had not tampered with the GPS device or tried to interfere with its transmission of a signal in any way. The device was charged and remained attached to his ankle. No one from the Department of Corrections investigated whether he had tampered with the device or whether the alert was the result of an equipment malfunction before he was taken into custody.

31. Prior to his being formally arrested, Plaintiff Robillard asked the police officers if he could call his parents to tell them what was happening. The police officers allowed Plaintiff to call his parents and let them know what was happening.

32. In addition, Plaintiff Robillard told the police officers that he took medications which he needed to bring with him to the jail, and the police officers said that was fine, and one of the officers grabbed a bag from Walmart in which were the medications. Upon getting to the police car, Plaintiff Robillard remembered that he had forgotten to bring his asthma inhaler, and one of the police officers went back into Plaintiff's apartment and retrieved it.

33. Plaintiff was then driven to Dodge County Jail in Juneau, Wisconsin, fingerprinted, photographed, given a tablet and jail items, strip searched, and dressed in a jail uniform.

34. He was then taken to one of the jail's detention pods, which contains an upper and lower level of cells and a day room, and Plaintiff was assigned a single-person cell.

35. He spent two nights in the detention pod with approximately 15 other inmates. His GPS bracelet was left attached to his ankle the whole time. Plaintiff

spent most of the time in his cell alone for fear of interacting with other inmates, lest they see Plaintiff's GPS device which might signify that his crime was a sex offense and thereby endanger Plaintiff's well-being by his becoming a target for attack from another inmate.

36. Plaintiff was released on the morning of Monday, April 29, 2024, between 9:00 am and 10:00 am to the custody of his parole officer Amanda Watters.

37. During his time in jail, he did not have access to certain of his medications, ones that were not in the bag of medications that the police allowed him to take with him to jail. In particular, he did not have access to his fluoxetine for his depression or the muscle relaxer medication for his back pain.

38. During his time in the jail, he was not able to make any calls to anyone, including his parents.

39. Upon being released from jail to the custody of his parole officer Watters, his parole officer drove Plaintiff back to his home in Beaver Dam, during which time Plaintiff called his boss at work to explain to him why he was not there — namely, that he had been arrested and taken to jail for having a malfunctioning GPS device.

40. After Plaintiff's conversation with his boss, Plaintiff's parole officer Watters offered to write an explanatory note for Plaintiff to give to his boss, explaining that Plaintiff was not at fault for the arrest but that it was the result of a malfunctioning GPS device. Officer Watters wrote the note later that day, and Plaintiff gave it to his boss the next day.

41. Upon arriving at his apartment, Plaintiff changed his clothes and was then taken to the parole office on Seippel Blvd. in Beaver Dam to have his GPS bracelet removed and replaced, which took approximately an hour. He was then permitted to go home.

42. As a result of the Department's policy, Plaintiff was jailed for two nights, missed an entire day of work and suffered emotional distress, fear and anxiety.

43. Throughout Plaintiff's time on extended supervision, which has been approximately four years now, he has experienced frequent technical difficulties with his GPS device. As a result of these technical difficulties, his GPS bracelet has been removed and replaced at least six times. This incident was the only time Plaintiff was arrested due to these technical difficulties.

## Class Allegations

44. Plaintiff brings this action on behalf of himself and all other similarly situated persons, pursuant to Federal Rule of Civil Procedure 23(b)(2). The named Plaintiff seeks to represent a class defined as follows: All individuals subject to GPS monitoring by the Wisconsin Department of Corrections who are on extended supervision, parole or another form of criminal supervision.

45. Plaintiff seeks classwide declaratory and injunctive relief to halt the Department's policy of automatically issuing arrest warrants for individuals subject to GPS monitoring on the weekends based on alerts of lost signal or suspected tampering. Because the Department has acted on grounds generally applicable to

the class, final injunctive and declaratory relief with respect to the class is appropriate.

46. Plaintiff meets the requisites for filing a class action. Certification of this case as a class action pursuant to Rule 23(b)(2) is the most efficient means of adjudicating Plaintiff's claims for injunctive relief because (1) the class is so numerous that joinder of all members is impractical; (2) there are questions of law and fact common to the class; (3) the claims of the representative Plaintiff are typical of the claims of the class; and (4) the representative Plaintiff will fairly and adequately protect the interests of the class.

   a. Numerosity: The proposed class is so numerous that joinder is impracticable. The class includes all persons currently or in the future subject to GPS monitoring while under the supervision of the Wisconsin Department of Corrections on parole, extended supervision, or another form of criminal supervision. Rule 23(b)(2)'s injunctive class provision was designed specifically for civil rights cases seeking "broad declaratory or injunctive relief for a numerous and often unascertainable or amorphous class of persons." W. Rubenstein, A. Conte, H. Newberg, 2 Newberg on Class Actions §4.26, at 99 (5th Ed. 2013).

   b. Commonality: There are questions of law and fact common to all class members, including but not limited to the following:

      - Whether Defendant knew or had reason to know that GPS devices were likely to malfunction resulting in false alerts of tampering;

      - Whether Defendant has a practice of incarcerating parolees on parole holds related to alerts of GPS tampering without investigating whether the alert resulted from an equipment malfunction;

      - Whether Defendant has adequate safeguards in place to protect against incarcerating parolees who have not tampered with their GPS devices or violated their rules of supervision; and

- Whether Defendant's policy of automatically issuing arrest warrants for individuals subject to GPS monitoring on the weekends based on alerts of lost signal or suspected tampering violates the Fourth Amendment.

c. Typicality: the claims of the named Plaintiff are typical of the claims of the members of the class he seeks to represent because all members of the class are subject to the same policy and at risk of being falsely imprisoned due to the policy.

d. Adequacy: Plaintiff is an adequate class representative because his interests are aligned with those of the class—namely, both Plaintiff and the class he seeks to represent seek an injunction prohibiting the Department from continuing its unlawful policy of automatically issuing arrest warrants for individuals subject to GPS monitoring on the weekends based on alerts of lost signal or suspected tampering. Plaintiff is represented by counsel competent and experienced in class action litigation.

## COUNT I
## 42 U.S.C § 1983
## Fourth Amendment: Unreasonable Seizures

47. Plaintiff realleges and reincorporates, as though fully set forth herein, each and every allegation above.

48. The Department is aware that GPS equipment frequently malfunctions resulting in false alerts of lost signal or potential tampering. Given the known frequency of equipment malfunctions, an alert, standing alone, does not provide reasonable suspicion to arrest and imprison a parolee for a parole violation. The Department's policy of automatically issuing arrest warrants based on alerts when parole agents are unavailable to investigate whether the alert resulted from an equipment problem leads to routine and repeated arrests without reasonable suspicion.

WHEREFORE, Plaintiff requests that this Court grant the following relief:

a. enter a declaration that the Wisconsin Department of Corrections policy challenged herein violates the Fourth Amendment to the United States Constitution;

b. enter an injunction barring Defendant and its agents, servants, employees and attorneys from continuing the policy challenged herein;

c. enter judgment in favor of Plaintiff and the members of the Class against Defendant;

d. award Plaintiff Robillard compensatory damages resulting from the violations of his constitutional rights;

e. enter judgment for reasonable attorney's fees and costs incurred in bringing this action; and

F. grant Plaintiff any and all other relief as law and justice demand.

Respectfully submitted,

/s/ Mark Weinberg
/s/ Adele D. Nicholas
*Counsel for Plaintiff*

Law Office of Mark G. Weinberg
3612 N. Tripp Avenue
Chicago, Illinois 60641
(773) 283-3913
mweinberg@sbcglobal.net

Law Office of Adele D. Nicholas
5707 W. Goodman Street
Chicago, Illinois 60630
(847) 361-3869
adele@civilrightschicago.com