# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SEAN ROBILLARD and SARA
DOMRES,

                Plaintiffs,

v.

GRACE KNUTSON,

                Defendant.

Case No. 24-CV-1077-JPS

**ORDER**

## 1.    INTRODUCTION

Plaintiffs Sean Robillard ("Robillard") and Sara Domres ("Domres") (together, "Plaintiffs") proceed in this putative class action against Grace Knutson ("Defendant") for unreasonable seizures in violation of the Fourth Amendment. ECF No. 11 (amended complaint).

Defendant argues that venue is improper in the Eastern District of Wisconsin ("Eastern District") and moves to dismiss this action, or alternatively to transfer the action to the Western District of Wisconsin ("Western District"). ECF No. 14. The motion is fully briefed. ECF Nos. 15, 25, 26. The parties have also submitted jury instructions detailing the elements of the claim at issue, as required by the Court's pretrial procedures order.[1] ECF No. 4 at 5; ECF No. 21. Separately, Plaintiffs move to certify

---

[1] The Court will not utilize these jury instructions in its analysis, however, because the parties failed to comply with the Court's protocols surrounding such instructions. Rather than being *joint* instructions, *see* ECF No. 5 at 4, they are merely Defendant's proposed instructions and briefly state that "Plaintiffs dispute" them. ECF No. 21 at 1. In the case of a dispute, the parties were to each "provide their version of the instruction accompanied by 1–2 cases in support

their proposed class. ECF No. 13. That motion is also fully briefed. ECF Nos. 13, 22, 23. As explained herein, Defendant's motion to dismiss or transfer will be denied and Plaintiffs' motion to certify their proposed class will be denied without prejudice.

## 2. RELEVANT ALLEGATIONS[2]

Plaintiffs bring this case on behalf of themselves and a putative class against Defendant, who is the Director of Sex Offender Programs for the Wisconsin Department of Corrections ("WDOC"). Plaintiffs allege that

> systemic deficiencies in the [WDOC] policies and practices have caused [WDOC]'s Electronic Monitoring Center [(the "Monitoring Center")] to issue warrants for individuals on extended supervision who are suspected of having tampered with their GPS monitors without taking reasonable measures to confirm whether the suspected tampering alert is related to an equipment malfunction.

---

thereof in the joint document" and "explain why the case(s) support their position." ECF No. 4 at 5. Because the parties failed to comply with this component of the Court's protocols, it will entirely disregard the proposed instructions and related law.

[2]This summary of facts is drawn from the amended complaint, ECF No. 11, and the parties' joint statement of undisputed facts, ECF No. 16; see *Allstate Life Ins. Co. v. Stanley W. Burns, Inc.*, 80 F. Supp. 3d 870, 875 (N.D. Ill. 2015) ("In deciding a motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), all allegations are taken as true, unless contradicted by the defendant's affidavits . . . ." (citing *Faulkenberg v. CB Tax Franchise Sys., L.P.*, 637 F.3d 801, 806 (7th Cir. 2011))). Citations thereto are omitted.

The Court also occasionally draws from both Plaintiffs' and Defendant's statements of disputed facts, ECF Nos. 17 and 24, citing to them within this section but omitting further citation within the Order. While these statements are listed as "disputed," the parties' briefing reveals no disputes in these facts, and all but one of the proffered facts are supported by discovery disclosures or affidavits. Accordingly, the Court will take these additional facts as true for the purposes of the motions currently before it.

The Court will refer to this practice herein as the "Policy." Defendant oversees the Monitoring Center, "which is responsible for [WDOC]'s GPS monitoring program and request[ing] . . . apprehension for individuals subject to electronic monitoring." Plaintiffs further allege that the Policy has resulted in constitutional deprivations, including Plaintiffs—and purportedly other members of the putative class—being wrongfully detained. Plaintiffs, individually and on behalf of the putative class, "seek a declaration that [WDOC]'s policy is unconstitutional both on its face and as applied to them[,] and an injunction prohibiting Defendant from continuing to enforce the [P]olicy." They further seek damages for harms suffered due to the Policy.

When the Monitoring Center issues an "Apprehension Request" after receiving a tampering alert, it is the local law enforcement agencies that make the actual arrests. ECF No. 16 at 3. The arrestees are then detained in whatever jail is local to them, and their local parole agent decides when to release them from custody. *Id.*

Plaintiffs allege that Robillard is currently on GPS monitoring and lives in Beaver Dam, WI, which is located in the Eastern District. Officers from the Beaver Dam Police Department arrested Robillard on Saturday, April 27, 2024 pursuant to a warrant that was issued because of the Policy. Though Robillard had not tampered with his GPS device and no one investigated or confirmed whether he had, he was nevertheless taken to Dodge County Jail—which is also located in the Eastern District—where he was fingerprinted, photographed, and strip searched. Robillard remained at Dodge County Jail for two nights, after which time he was released to the custody of his parole officer, who wrote to his employer to say that Robillard had missed work because he was detained due to "a

malfunctioning GPS device." Robillard's GPS monitoring device was replaced after this incident.

Domres had a similar experience, according to the complaint. She lives in Sullivan, Wisconsin, which is located in the Western District.[3] She was on GPS monitoring until December 2024, and was arrested on August 31, 2024 for allegedly tampering with her GPS device. Domres did not tamper with her device, but she was nevertheless arrested and brought to Jefferson County Jail—which is also located in the Western District—where she was booked, fingerprinted, and strip searched. Domres was held at Jefferson County Jail for three nights over a holiday weekend, after which time she was released to her parole officer's custody and a GPS technician changed the strap on her device.

Plaintiffs allege that they were both wrongfully held because of the Policy and the fact that WDOC does not have any "on-call" parole officers on the weekends or holidays to address situations where individuals on GPS monitoring are arrested due to alleged monitor tampering.

Defendant's personal and sole residence is in Green County, Wisconsin, which is located in the Western District. Defendant works at WDOC's main office, which is located in Madison, Wisconsin, in the Western District. The Monitoring Center is also located in Madison, Wisconsin. Employees of the Monitoring Center work in Madison, Wisconsin, and any of its records, documents, policies, and procedures are located there. Furthermore, the Policy at issue in this case was promulgated in Madison, Wisconsin, as were any other operating policies and

---

[3] While Domres resides in the Western District, Plaintiffs point out that her home is just over ten miles closer to the Eastern District's courthouse than the Western District's courthouse. ECF No. 24 at 1–2.

Case 2:24-cv-01077-JPS    Filed 07/09/25    Page 4 of 26    Document 30

procedures for GPS monitoring. ECF No. 17 at 1 (citing ECF No. 18 at 2). Defendant and Monitoring Center staff who respond to tampering alerts generally do so from their work location in Madison, Wisconsin. *Id.* at 1–2 (citing ECF No. 18 at 2).

Of the twenty-four witnesses that have relevant information to this case, as provided in the parties' discovery disclosures, at least fifteen of them reside in the Eastern District. ECF No. 24 at 1 (citing ECF Nos. 24-1 and 24-2).

## 3. LAW AND ANALYSIS

### 3.1 Motion to Dismiss or Transfer to the Western District

Defendant moves to dismiss the amended complaint for improper venue under Rule 12(b)(3) or, in the alternative, to transfer this action to the Western District. ECF No. 14. Defendant does not take a position as to whether the Court should dismiss, rather than transfer, the case, but merely argues for one or the other. ECF No. 15 at 10; ECF No. 26 at 4. Specifically, Defendant first argues that the Court should dismiss the action or transfer it to the Western District because venue is improper in the Eastern District. ECF No. 15 at 4–10. Even if venue *is* proper in the Eastern District, Defendant next argues, the Court should still transfer the case to the Western District in the interests of justice under 28 U.S.C. § 1404(a). *Id.* at 11–14. In response, Plaintiffs argue that venue is proper in the Eastern District, ECF No. 25 at 2–5, and that transfer would be inappropriate under § 1404(a), *id.* at 5–10.

#### 3.1.1 Legal Standard for Motion to Dismiss for Improper Venue or Motion to Transfer Under § 1406

Federal Rule of Civil Procedure 12(b)(3) allows for a case to be dismissed if it was brought in an improper venue. If a court finds that venue

is improper, it "shall dismiss [the case], or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). When considering a motion to dismiss under Rule 12(b)(3), "which allows for dismissal for improper venue, the district court assumes the truth of the allegations in [Plaintiffs'] complaint, *unless* contradicted by . . . [D]efendant's affidavits." *Deb v. SIRVA, Inc.*, 832 F.3d 800, 809 (7th Cir. 2016) (emphasis in original) (citing 5B WRIGHT & MILLER'S FED. PRAC. AND PROC. § 1352 (2004)). The Court further draws all reasonable inferences in favor of Plaintiffs. *Berkshire Invs., LLC v. Aircraft Hinge, Inc.*, No. 14 C 5020, 2015 WL 556348, at *1 (N.D. Ill. Feb. 9, 2015) (citing *First Health Grp., Corp. v. Sanderson Farms, Inc.*, No. 99 C 2926, 2000 WL 139474, at *2 (N.D. Ill. Jan. 28, 2000)).

If the Court determines that venue is improper, it has broad discretion in determining whether to transfer or dismiss under § 1406(a). *See Cote v. Wadel*, 796 F.2d 981, 985 (7th Cir. 1986) (citing *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir. 1986)). However, the interests of justice may call for transfer rather than dismissal to avoid penalizing a plaintiff based on "time-consuming and justice-defeating technicalities." *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 467 (1962) (quoting *Internatio-Rotterdam, Inc. v. Thomsen*, 218 F.3d 514, 517 (4th Cir. 1955)).

### 3.1.2   Whether Venue is Proper in The Eastern District

"[T]he purpose of venue statutes is to prevent litigation from being conducted in a forum that is inconvenient to the defendant or unfair because the forum lacks a sufficient connection with the events giving rise to the claim." *Stickland v. Trion Grp., Inc.*, 463 F. Supp. 2d 921, 924 (E.D. Wis. 2006). "For venue to lie, it must be proper as to . . . all claims." *Id.* (citing *PKWare, Inc. v. Meade*, 79 F. Supp. 2d 1007, 1015 (E.D. Wis. 2000)). Venue

can be proper in more than one district. *Armstrong v. LaSalle Bank Nat'l Ass'n*, 552 F.3d 613, 617 (7th Cir. 2009) (citing *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003)).

Once a defendant challenges venue, the plaintiff bears the burden of establishing that venue is proper.[4] *Malley v. Farias*, No. 24-C-1116, 2024 WL 5264676, at *1 (E.D. Wis. Dec. 31, 2024) (citing *Allstate Life Ins. Co.*, 80 F. Supp. 3d at 875 and *Burns v. Joseph Ertl, Inc.*, No. 11-C-0132, 2011 WL 3472370, at *1 (E.D. Wis. Aug. 8, 2011)); *Int'l Travelers Cheque*, 660 F.2d at 222 ("Plaintiff has the burden of establishing proper venue." (quoting *Grantham*, 420 F.2d at 1184)).

"The question of whether venue is improper 'is generally governed by 28 U.S.C. § 1391.'" *Malley*, 2024 WL 5264676, at *1 (quoting *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 55 (2013)). Under § 1391(b), venue is proper in

---

[4]Not all courts within the Seventh Circuit agree that this is settled law. *See, e.g., Stickland,* 463 F. Supp. 2d at 924–25 (stating that "courts and commentators disagree as to which party bears the burden" of proving where venue is proper but ultimately concluding that the defendant bears the burden of showing that venue is improper (citing *In re Peachtree Lane Assocs., Ltd.,* 150 F.3d 788, 792 (7th Cir. 1998) and *Grantham v. Challenge-Cook Bros., Inc.,,* 420 F.2d 1182, 1184 (7th Cir. 1969))); *see also T.C. Dev. & Design, Inc. v. Disc. Ramps.com, LLC*, No. 07-C-0861, 2008 WL 11518701, at *5 (E.D. Wis. Aug. 26, 2008) ("The defendant bears the burden of establishing that venue is improper." (citing *Pacer Global Logistics, Inc. v. Nat'l Passenger R.R. Corp.*, 272 F. Supp. 2d 784, 788 (E.D. Wis. 2003))). This Court does not agree that the Seventh Circuit law is unsettled. Rather, it appears to establish different standards for bankruptcy cases, *see Peachtree Lane Assocs.,* 150 F.3d at 792 (requiring that defendants establish that venue is improper), versus standard civil cases, *see Int'l Travelers Cheque Co. v. BankAmerica Corp.,* 660 F.2d 215, 222 (7th Cir. 1981) (requiring that plaintiffs establish that venue is proper), because different rules apply when determining venue for bankruptcy cases. In any event, however, it is not outcome determinative here because Plaintiff has established that venue is proper in the Eastern District.

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . ; or (3) . . . any judicial district in which any defendant is subject to the [C]ourt's personal jurisdiction,

28 U.S.C. § 1391(b), but (3) only applies "if there is no district in which an action may otherwise be brought as provided in this section." *Id.*

Neither party argues that venue may be determined by § 1391(b)(3), so the Court will analyze only § 1391(b)(1) and (2). Venue is proper in the Western District under subsection (b)(1), because the only defendant in this case resides there. For the same reasons, venue is improper in the Eastern District under subsection (b)(1). That leaves the Court to determine whether venue is proper in the Eastern District under § 1391(b)(2)—i.e., whether "a substantial part of the events or omissions giving rise to the claim occurred" in the Eastern District.

The parties hotly contest this issue. Defendant argues that the Court must determine the substantial part of events based *only* upon the Defendant's own actions and may not consider any resulting actions taken by unnamed persons or by Plaintiffs. ECF No. 15 at 4–5 (citing *PKWare, Inc.*, 79 F. Supp. 2d at 1015). Defendant further argues that venue is *only* proper in the Western District under subsection (b)(2) because the event giving rise to Plaintiffs' claims is the promulgation of the Policy, which occurred in the Western District. *Id.* at 6–9. Plaintiffs do not contest that venue is proper in the Western District for the reasons Defendant states but respond that venue may lie in more than one district, and they contend that venue is proper in the Eastern District because Robillard—and ostensibly other members of the putative class—experienced Fourth Amendment violations

Case 2:24-cv-01077-JPS    Filed 07/09/25    Page 8 of 26    Document 30

in the Eastern District as a result of the Policy. ECF No. 25 at 2–3; *see* ECF No. 24-1.

The Court is not persuaded by Defendant's arguments. First, Defendant cites *Repository Technology v. System Consultants, Inc.*, Case No. 02-C-8640, 2003 WL 21148340, at *5 (N.D. Ill. May 16, 2003) for the proposition that § 1391(b)(2) "focuses on the location of the events that give rise to a party's injury, not the location of the injury itself." ECF No. 15 at 5.[5] But the Court is not persuaded that this case supports the conclusion that it may only consider Defendant's actions when determining where venue is proper. *Repository Technology* is an unpublished decision from the Northern District of Illinois circa 2001, and in it the court does not cite to any authority to support the assertion Defendant uses. Similarly, in her reply, Defendant cites an Eastern District of Wisconsin case for the proposition that, in interpreting § 1391(b), the Court must focus on "the activities of the defendant." ECF No. 26 at 6 (quoting *Est. of Moore v. Dixon*, 460 F. Supp. 2d 931, 936 (E.D. Wis. 2006)). But the court's full discussion of the issue in *Estate of Moore* reveals that courts must undergo a "qualitative . . . inquiry" of all the events that form the "historical predicate" for the suit

---

[5]Defendant also cites to *PKWare, Incorporated* for the proposition that "the [C]ourt must focus on the activities of the defendant" when determining venue. ECF No. 15 at 4–5 (citing 79 F. Supp. 2d at 1016) (Defendant's pincite to page 1015 of the opinion appears to be an error, because the language that supports their assertion lies on page 1016). But the court in *PKWare* relied on an Eighth Circuit case to support this assertion—a case that is against the greater weight of authority. *PKWare, Inc.*, 79 F. Supp. 2d at 1016 (citing *Woodke v. Dahm*, 70 F.3d 983, 985 (8th Cir. 1995)); *see Master Tech Prods., Inc. v. Smith*, 181 F. Supp. 2d 910, 914 (N.D. Ill. 2002) (noting that the Seventh Circuit had not yet weighed in on a circuit split of whether it is only the defendant's actions that matter for purposes of venue, or rather any of the relevant events that gave rise to the claim, but that the majority of the circuits that had weighed in on the question held the latter).

and that have a "close nexus" to the claim to determine whether venue is proper in a given district. *See Est. of Moore*, 460 F. Supp. at 935–36 (citing *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 432–33 (2d Cir. 2005) and *Master Tech. Prods.*, 181 F. Supp. 2d at 914); *id.* at 936 ("The court must look to the *entire* sequence of events underlying the claim . . . ." (emphasis added) (citing *Uffner v. La Reunion Francaise, S.A.*, 244 F.3d 38 (1st Cir. 2001))); *see also Doe v. New York*, No. 10 CV 1792 RJD VVP, 2012 WL 4503409, at *4 (E.D.N.Y. Sept. 28, 2012) (describing how the defendants improperly conflated the standard for personal jurisdiction with that for venue in arguing that a court may only look to the acts of the defendants to determine where venue is proper (collecting cases)).

Second, and more importantly, the Seventh Circuit has specifically stated that a district court's finding was "correct[]" when it determined that venue was proper in a district where the defendant took no personal action, but where the events giving rise to the plaintiff's injuries nevertheless occurred. *Wade v. Farmers Ins. Grp.*, 96 F.3d 1450 (Table), at *1–2 (7th Cir. 1996) (describing factual underpinnings that the plaintiff brought suit in Indiana against his Texas-based insurer, where both parties had entered into the insurance contract in Texas but the underlying injury was a vehicle accident that occurred in Indiana, and stating that "the district court correctly noted that venue in Indiana was proper under 28 U.S.C. § 1391"); *see, e.g., Master Tech Prods.*, 181 F. Supp. 2d at 913–14 (finding that venue was proper in a district where the defendant's only actions were telephone communications that furthered the alleged injury). This is because "the focus of § 1391 is the nexus between the facts and the cause of action, not the defendant and the cause of action." *Moore v. AT&T Latin Am. Corp.*, 177 F. Supp. 2d 785, 789 (N.D. Ill. 2001). Indeed, "[t]he test for venue under

§ 1391 looks not to the defendant's contacts with the forum, but the location of the events giving rise to the cause of action." *Master Tech Prods.*, 181 F. Supp. 2d at 914 (citing *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994)).

Defendant next argues that because Plaintiffs are challenging a statewide policy, the only place where a "substantial part of the events giving rise to the claim occur[red] [is] the venue where the [P]olic[y] w[as] created," which is the Western District. ECF No. 15 at 6 (citing *Chester v. Beard*, No. 07-4742, 2008 WL 2310946 (E.D. Pa. June 2, 2008)). The cases Defendant cites in support are not persuasive. Most importantly, each of the cases improperly relies on reasoning from other cases that precede an important amendment to the venue statute. Specifically,

> [the current version of] Section 1391(b)(2) is the result of a 1990 amendment which changed the law to the extent that prior law had encouraged an approach that a claim could generally arise in *only one venue*. Under the amended law, however, venue may be proper in more than one district as long as a "substantial" part of the key events or omissions occurred in the district.

*PKWare, Inc.*, 79 F. Supp. 2d at 1016 (emphasis added) (citing *Harley–Davidson v. Motor Sport, Inc.*, 960 F. Supp. 1386, 1393 (E.D. Wis. 1997) and *Chem. Waste Mgmt., Inc. v. Sims*, 870 F. Supp. 870, 875 (N.D. Ill. 1994)); *see also Cottman Transmission Sys., Inc.*, 36 F.3d at 294. Accordingly, cases decided prior to the 1990 amendment are of limited value because they interpret a version of Section 1391(b) that has since been intentionally modified. Each of the Pennsylvania cases that Defendant cites suffers from this flaw: they are part of the progeny of a pre-1990 amendment case that interpreted the exact language that was subsequently changed. ECF No. 15

Case 2:24-cv-01077-JPS    Filed 07/09/25    Page 11 of 26    Document 30

at 6–7, 12 (citing *Perkins v. Snider*, No. 94-4785, 1994 WL 530045, at *2–3 (E.D. Pa. Sept. 2, 1994) (relying on *Leroy v. Great W. United Corp.*, 443 U.S. 173 (1979)[6] and, rather than noting how *Leroy's* main goal was to interpret pre-1990 amendment language in Section 1391(b), instead stating that *Leroy* "is still controlling to the extent that it informs courts of the relevant considerations for determining venue under Section 1391(b)(2)"); *Stanton-Negley Drug Co. v. Pa. Dep't of Pub. Welfare*, No. 07-1309, 2008 WL 1881894, at *5 (W.D. Pa. Apr. 24, 2008) (relying on the language and reasoning of *Perkins*, 1994 WL 530045); *Chester*, 2008 WL 2310946, at *8 (same); and *Stinchcombe v. Caruso*, No. 2:08-CV-14271, 2008 WL 4561515, at *1 (E.D. Mich. Oct. 9, 2008) (interpreting pre-1990 amendment language and relying on the language and reasoning from *Al-Muhaymin v. Jones*, 895 F.2d 1147 (6th Cir. 1990), which was decided before the 1990 amendment took effect)).

---

[6]The Supreme Court in *Leroy* was tasked with interpreting "the claim arose" language, which was language in the pre-1990 amendment version of 1391(b) that "implied that, for venue purposes, a claim arises in only one district . . . ." *Alcoholics Anonymous World Servs., Inc. v. Friedman*, No. 91 Civ. 8741 (RLC), 1992 WL 150633, at *3 (S.D.N.Y. June 17, 1992) (citing *Leroy*, 443 U.S. 173 and *Federal Courts Study Implementation Act of 1990*, H.R. Rep. No. 734, 101st Cong., 2d Sess. 23 (1990)). The 1990 amendment changed "the claim arose" language and therefore "rendered *Leroy's* holding 'largely academic.'" *Id.* (citation omitted). In the post-1990 versions of § 1391(b), it is not unusual for venue to be proper in more than one district. *Id.* (citation omitted); *see also Est. of Moore*, 460 F. Supp. at 936 (noting that venue may be proper in more than one district and that it makes no difference in which district a majority of events occurred, so long as a substantial portion occurred in both districts (citing *TruServ v. Neff*, 6 F. Supp. 2d 790 (N.D. Ill. 1998) and *Rich-Mix Prods., Inc. v. Quikrete Co., Inc.*, No. 98 C 6724, 1999 WL 409946, at *1 (N.D. Ill. June 7, 1999))); *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867 (2d Cir. 1992) (noting that "as a general matter," the post-1990 version of Section 1391 does not require district courts to determine the *best* venue); *Exelon Generation Co., LLC v. Grumbles*, 380 F. Supp. 3d 1, 12–13 (D.D.C. 2019) (explaining *Leroy's* limited use after the 1990 amendment to Section 1391(b)).

Some of Defendant's cases are also factually inapposite. *See Chester*, 2008 WL 2310946, at *7–8 (granting motion to transfer when the plaintiffs resided in the judicial district where they brought suit, but the statewide policy they challenged was both promulgated in a different district and *only* implemented at a facility in that same district); *Beaton v. Manley*, No. Civ. 03-009-M, 2003 WL 21145803, at *2 (D.N.H. May 12, 2003) (granting motion to transfer where all the defendants resided in the same non-forum district *and* all the events or omissions giving rise to the claim also occurred in the district where the defendants resided).

The Court now turns to the question of whether venue in this case is proper in the Eastern District. For venue to be proper under Section 1391(b), "[the] majority of the events giving rise to the claim need not have taken place in a particular district, . . . so long as a substantial portion of the events occurred there." *Honest Abe Roofing Franchise, Inc. v. Lesjon Holdings*, 705 F. Supp. 3d 872, 881 (S.D. Ind. 2023) (citing *Est. of Moore*, 460 F. Supp. 2d at 936). And "in order for events to be deemed 'substantial' under th[is] statute, they must have a 'close nexus' to the alleged claim." *Est. of Moore*, 460 F. Supp. 2d at 936 (quoting *Daniel*, 428 F.3d at 433). Plaintiffs bring claims of wrongful seizure, both personally and on behalf of a putative class, occurring in both the Eastern District and the Western District pursuant to the Policy promulgated by Defendant. *See generally* ECF No. 11. In this case, there is undoubtedly a "close nexus" between the events that occurred in the Eastern District—namely, the arrest and detainment of Robillard and ostensibly other putative class members due to the Policy—and Plaintiffs' wrongful seizure claims. In fact, Robillard and any other putative class members who were arrested and detained in the Eastern District would have no standing to participate in this case if not for those

very same events. The promulgation of the Policy alone did not deprive of them of their Constitutional rights. Instead, "the alleged deprivation of Plaintiff[s'] [Fourth] Amendment . . . rights took place because of the individualized application of th[e] [P]olicy to" Plaintiffs and putative class members. *Combs v. Fla. Dep't of Corr.*, 461 F. Supp. 3d 1203, 1212 (N.D. Fla. 2020). Accordingly, a substantial portion of events giving rise to Plaintiffs' claims occurred in the Eastern District, and therefore venue is proper here. *See id.; Harvard v. Inch*, 408 F. Supp. 3d 1255, 1261–62 (N.D. Fla. 2019) (finding that, in a class action challenging a statewide policy, substantial events occurred in both the district in which the policy was promulgated and the districts in which the policy was implemented); *League of Women's Voters of Ohio v. Blackwell*, 432 F. Supp. 2d 723, 734 (N.D. Ohio 2005), *aff'd in part, rev'd in part sub. nom. for other reasons League of Women Voters of Ohio v. Brunner*, 548 F.3d 463 (6th Cir. 2008) (holding that, in a case challenging a statewide policy concerning voter treatment, venue was proper in a district where multiple voters experienced alleged harms due to the policy, even though the policy was not promulgated in that district); *Doe*, 2012 WL 4503409, at *5 (noting that both the "locus of defendants' actions alone" *and* the "locus of the injuries" could serve as proper districts for venue) (internal bracketing omitted); *Kalman v. Cortes*, 646 F. Supp. 2d 738, 742 (E.D. Pa. 2009) (denying motion to transfer venue to the district where a challenged statute that allegedly impacted free speech was promulgated because the "suppression [of the plaintiff's free speech] itself [wa]s a more 'substantial' event than the decision to suppress the speech").

Further, Plaintiffs allege that Defendant is responsible for the issuance of warrants for individuals on electronic monitoring that stem from faulty tampering alerts. ECF No. 11 at 2, 4. This issuance of warrants

is a communication from the Monitoring Center, in the Western District, to the relevant local police department, be it in the Western District or the Eastern District. *See id.*; ECF No. 18 at 2. These communications alone could serve as the basis for a "substantial part of the events or omissions giving rise to the claim." 29 U.S.C. § 1391(b)(2); *see Master Tech. Prods.*, 181 F. Supp. at 913–14 ("[V]enue under the 'substantial part' provisions of § 1391 'may be satisfied by a communication to or from the district in which the cause of action was filed, given a sufficient relationship between the communication and the cause of action.'" (quoting *Celozzi v. Boot*, No. 00C 3285, 2000 WL 1141568, at *6 (N.D. Ill. Aug. 11, 2000) and citing *Pasulka v. Sykes*, 131 F. Supp. 2d 988, 994 (N.D. Ill. 2001))).

Because the Court is not convinced that venue is "undisputably improper" for Plaintiffs' class claims in the Eastern District as Defendant argues, it finds no need to address Defendant's additional argument that venue is improper in the Eastern District because it must be proper as to all causes of action. ECF No. 15 at 9–10 (citing *Pacer Global Logistics, Inc.*, 272 F. Supp. 2d at 788 and *Giordano v. City of Palm Bay*, No. 07 C 3361, 2007 WL 4365341, at *2 (N.D. Ill. Dec. 12, 2007)). For the reasons stated above, venue for Plaintiffs' class action claims is proper in the Eastern District. Thus, the case cannot be dismissed under Rule 12(b)(3) or transferred under § 1406.

### 3.1.3   Legal Standard for Motion to Transfer Under § 1404

The Court now turns to Defendant's motion to transfer pursuant to § 1404(a). ECF No. 15 at 11. "In assessing the merits of a § 1404(a) request, the district court is vested with broad discretion to weigh all relevant factors and to determine if, on balance, the action would proceed more expeditiously and the ends of justice be better served if transfer were effected." *Pikofsky v. Jem Oil*, 607 F. Supp. 727, 731 (E.D. Wis. 1985) (citing

*Kline v. Consol. Rail Corp.*, 461 F. Supp. 326, 327 (E.D. Pa. 1978)). The Court performs a "flexible and individualized analysis" generally considering "the availability of and access to witnesses, . . . each party's access to and distance from the resources of each forum, . . . the location of material events[,] and the relative ease of access to sources of proof."[7] *Rsch. Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010) (first quoting *Steward Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) then collecting cases). "Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer." *Id.* at 978–79 (collecting cases). "The moving party bears the burden of establishing 'that the transferee forum is clearly more convenient.'" *Newbold v. HealthEquity, Inc.*, No. 23-cv-0544-bhl, 2024 WL 473673, at *2 (E.D. Wis. Feb. 7, 2024) (quoting *Coffey*, 796 F.2d at 219–20).

"The 'interest of justice' is a separate element of the transfer analysis that relates to the efficient administration of the court system." *Rsch. Automation*, 626 F.3d at 978 (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 626–27 (1964)). In considering this element, the Court looks to factors like docket congestion and likely speed to trial in both districts, each court's familiarity with the relevant law, the respective desirability of resolving the

---

[7]Plaintiffs also assert that the Court should consider their choice forum as a factor in the convenience analysis weighing against transfer. ECF No. 25 at 6–7 (citing *Innovaport, LLC v. Target Corp.*, 678 F. Supp. 3d 1060, 1063 (W.D. Wis. 2023) and *Combs*, 461 F. Supp. 3d at 1214). Defendants, however, argue that because Plaintiffs are pursuing a class action, their choice of forum is irrelevant. ECF No. 15 at 11–12 (citing *Boyd v. Snyder*, 44 F. Supp. 2d 966, 969 (N.D. Ill. 1999)); ECF No. 26 at 5–6. Because the cases that Plaintiffs cite are not class actions, and they failed to address Defendant's argument that their pursuit of a class action renders their choice forum irrelevant, the Court will not consider this factor in its convenience analysis.

controversies in each locale, and the relationship of the community to the controversy. *Id.* (collecting cases).

### 3.1.4 Whether Venue Should be Transferred to the Western District Under § 1404

First analyzing which district would be more convenient, the Court finds that this question presents a "close call" such that transferring the matter based on convenience would be inappropriate. *Rsch. Automation*, 626 F.3d at 978–79. The first factor to consider is the availability of and access to witnesses. In her opening brief, Defendant merely asserts that "the majority of the relevant sources of proof are housed" in the Western District, including "witnesses with relevant knowledge" of the Policy. ECF No. 15 at 12–13. When confronted with Plaintiffs' argument that, of the twenty-four total witnesses identified by the parties as having relevant information, at least eighteen reside in the Eastern District, ECF No. 25 at 9–10 (citing ECF No. 24 at 1), Defendant concedes that this factor may be neutral, ECF No. 26 at 8. The Court, however, does not see this factor as neutral. While there are clearly relevant witnesses who reside in both districts, the parties' own disclosures demonstrate that more of those witnesses reside in the Eastern District. This factor, then, weighs slightly against transfer.

The second factor is "each party's access to and distance from resources in each forum," *Rsch. Automation,* 626 F.3d at 978, otherwise referred to as the convenience of the parties, *Law Bulletin Publ'g, Co. v. LRP Publ'ns, Inc.*, 992 F. Supp. 1014, 1017 (N.D. Ill. 1998). In weighing this factor, the Court should consider the parties' residences and their "ability to bear the expenses of litigating in a particular forum." *Law Bulletin Publ'g,* 992 F. Supp. at 1019 (citing *Habitat Wallpaper & Blinds, Inc. v. K.T. Scott Ltd. P'ship,* 807 F. Supp. 470, 474 (N.D. Ill. 1992)). Here, Plaintiffs both live nearer to the

Eastern District's courthouse than to that of the Western District. It is unclear at this time how the location of any putative class members' residences would factor into this analysis, so the Court will not consider their convenience at this time. Defendant lives in the Western District and thus transfer would be more convenient for her. Neither party has put forth any legitimate[8] additional considerations surrounding their abilities to bear the expense of litigating in either district, nor does the Court have any reason to doubt any party's ability to litigate in the Eastern District or the Western District, the courthouses of which are less than two hours apart when driving. This appears to be a scenario in which transferring the case would merely "shift[] inconvenience from one party to another." *Rsch. Automation*, 626 F.3d at 978 (collecting cases); *Law Bulletin Publ'g*, 992 F. Supp. at 1019 (quoting *Chem. Waste Mgmt.*, 870 F. Supp. at 876)). Accordingly, this factor cannot serve as the basis for transfer and is neutral at best.

------

[8]The Court notes that it declines to entertain two arguments made by Plaintiffs in their response related to this factor. First, Plaintiffs claim that Defendant's residence should be given less weight because she is the employee of WDOC and "the employees of sued entities are . . . given less weight." ECF No. 25 at 9 (citation omitted). This authority is inapposite, first, because it relates to the convenience of employee *witnesses*, not the parties themselves, and second because Plaintiffs did not sue Defendant's employer, WDOC, rather they sued Defendant in her personal capacity. Accordingly, her residence is entitled to as much weight as any party.

Second, Plaintiffs comment that Defendant has been named in five other cases in the Eastern District and none of those cases were transferred to the Western District. *Id.* (citing ECF No. 24 at 2). The Court will disregard this argument because it does not fit within any of the factors that the Court must weigh, and Plaintiffs provide no authority to suggest that it is an appropriate consideration. Further, as Defendant notes, each of those five cases were dismissed at early stages for reasons unrelated to venue. *See* ECF No. 26 at 7–8.

As for the third factor, the location of material events, the discussion above—*supra* Section 3.1.2—demonstrates that material events took place in both the Eastern District and the Western District. Thus, this factor is also neutral.

Lastly, Defendant argues that the majority of the sources of proof lie in the Western District, where WDOC and the Monitoring Center are located. ECF No. 15 at 12–13. Plaintiffs respond that, with modern technological advancements, courts tend to weigh this factor as relatively neutral. ECF No. 25 at 8 (citing *Milwaukee Elect. Tool Corp. v. Black & Decker (N.A.) Inc.*, 392 F. Supp. 2d 1062, 1064 (W.D. Wis. 2005); *Law Bulletin Publ'g*, 992 F. Supp. at 1018; and *Arena Football League, Inc. v. Roemer*, 947 F. Supp. 337, 341 (N.D. Ill. 1996)). Defendant does not provide any authority to contradict this response, and in her reply she further concedes that the factor is "[a]t most . . . neutral." ECF No. 26 at 8. The Court will thus find this factor neutral.

Ultimately, Defendant has not met her burden of establishing that the Western District is "clearly more convenient" because each of the factors the Court must weigh are either neutral or weigh slightly against transfer. *Newbold*, 2024 WL 473673, at *2 (quoting *Coffey*, 796 F.2d at 219–20).

Next, while the "interest of justice [analysis] may be determinative, warranting transfer or its denial even where the convenience of the parties and witnesses points toward the opposite result," *Rsch. Automation*, 626 F.3d at 978 (citing *Coffey*, 796 F.2d at 220–21), that is not the case here. Defendant does not argue this factor weighs in favor of transfer due to docket congestion, likely speed to trial, or the relationship of the community to the controversy. ECF No. 15 at 13–14; *Rsch. Automation*, 626 F.3d at 978 (quoting *Van Dusen*, 376 U.S. at 626–27). Instead, Defendant

argues only that the Western District "is a more appropriate forum to enforce and monitor any equitable relief." ECF No. 15 at 13. As Plaintiffs point out in their response, however, "[a]ny district court in a state can enter and enforce equitable relief against a state agency whose polices are enforced statewide." ECF No. 25 at 10 (citing *Clement v. Cal. Dep't of Corr.*, 364 F.3d 1148 (9th Cir. 2004) and *Stone v. Jeffreys*, No. 21 C 5616, 2022 U.S. Dist. LEXIS 180228 (N.D. Ill. Aug. 30, 2022)). Defendant concedes that she is not challenging the Court's authority to enter state-wide equitable relief in this case but nevertheless asserts that the Western District is a better venue for the relief sought. ECF No. 26 at 9. The Court disagrees. Because Plaintiffs reside in both the Eastern District and the Western District, and any putative class members would likely also be split amongst the two, the Eastern District has a substantial interest in resolving this controversy and enforcing any equitable relief. The Court therefore finds that the interests of justice are served by denying Defendant's motion to transfer.

### 3.1.5   Conclusion

For the reasons discussed above, the Court finds that venue is proper in the Eastern District and that Defendant has not met her burden in showing that the Western District is "clearly more convenient," *Newbold*, 2024 WL 473673, at *2 (quoting *Coffey*, 796 F.2d at 219–20), or that it would serve the interests of justice, such that transfer would be appropriate pursuant to § 1406. Accordingly, Defendant's motion to dismiss or, in the alternative, to transfer to the Western District will be denied.

### 3.2   Motion for Class Certification

Next, the Court addresses Plaintiffs' motion to certify a class pursuant to Federal Rule of Civil Procedure 23. ECF No. 13. Plaintiff asks the Court to certify the following class: "[A]ll persons currently or in the

future who are subject to GPS monitoring by [WDOC] who are on extended supervision (*e.g.*, parole or another form of criminal supervision)." *Id.* at 1.

### 3.2.1 Legal Standard for Class Certification

For their case to be eligible for class treatment, Plaintiffs must show the following: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(1)–(4). Further, a class may only be certified if it meets one of the subsections of Rule 23(b). *Priddy v. Health Care Serv. Corp.*, 870 F.3d 657, 660 (7th Cir. 2017) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011)).

Plaintiffs "bear[] the burden of proving by a preponderance of the evidence all necessary prerequisites to the class action." *Id.* at 660. "This normally means that some discovery related to the class certification must take place." *Id.* Accordingly, when determining whether Plaintiffs meet their burden, "[t]he court does not presume that all well-pleaded allegations are true for purposes of deciding the certification question." *Armes v. Sogro, Inc.*, No. 08-C-0244, 2011 WL 1197537, at *2 (E.D. Wis. Mar. 29, 2011) (citing *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676–77 (7th Cir. 2001)); *Priddy*, 870 F.3d at 660 (noting that the Court does not conduct its class certification inquiries in a "fact-free zone"). "Rather, it should look beneath the surface of a complaint to conduct the inquiries identified in Rule 23 and exercise the discretion it confers." *Armes*, 2011 WL 1197537, at *2 (quoting *Szabo*, 249 F.3d at 677 (internal bracketing and quotation marks omitted)). "If there are material factual disputes, the [C]ourt must 'receive evidence . . . and resolve the disputes before deciding whether to certify the

class.'" *Messner*, 669 F.3d at 811 (quoting *Szabo*, 249 F.3d at 676). Class certification determinations should not, however, be "a dress rehearsal for the trial on the merits." *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012) (citing *Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010); *Kohen v. Pac. Inv. Mgmt. Co.*, 571 F.3d 672, 677 (7th Cir. 2009); and *Payton v. County of Kane*, 308 F.3d 673, 677 (7th Cir. 2002)). Ultimately, "certification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.'" *Dukes*, 564 U.S. at 350–51 (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)).

### 3.2.2 Plaintiffs' Noncompliance with Court Protocols and Local Rules

Defendant first argues that Plaintiffs' motion for class certification should be denied because Plaintiffs failed to comply with the Court's requirement that they meet and confer with Defendant before filing the motion and file a written certification of the same. ECF No. 22 at 3–4 (citing ECF No. 4 at 10-11). Defendant correctly notes that the Court warns that it may "strike or outright deny a motion or other relief if counsel fails to meet and confer in good faith." *Id.* (quoting ECF No. 4 at 11). Plaintiffs, in their reply, "apologize for not taking the additional step of discussing the motion with counsel prior to filing" it, but argue that their failure to meet and confer was "harmless." ECF No. 23 at 3.

It is well within the Court's authority to deny motions for failure to comply with its protocols or with the local rules. *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 528 (7th Cir. 2020) ("[D]istrict courts may require strict compliance with their local rules . . . ." (citing *Metro. Life Ins. Co. v. Johnson*, 297 F.3d 558, 562 (7th Cir. 2002) and *Bordelon v. Chi. Sch. Reform. Bd.*

*of Trs.*, 233 F.3d 524, 528 (7th Cir. 2000))); *Stevo v. Frasor*, 662 F.3d 880, 887 (7th Cir. 2011); *see, e.g., Roundtree v. Reynolds*, 23-CV-552-JPS, 2024 WL 2746712, at *4 (E.D. Wis. May 29, 2024) ("Defendants' motion to dismiss must be denied for a second, independent reason: it fails to comply with the Court's protocols for such motions.").While it will not elect to strike or outright deny Plaintiffs' class certification motion due to their failure to meet and confer, the Court will note the problematic theme of Plaintiffs' disregard for the Court's protocols and the local rules. As Defendant points out Plaintiffs have repeatedly flaunted the Local Rules and the Court's protocols. ECF No. 26 at 5 n.1. First, Plaintiffs filed their class certification motion without meeting and conferring with Defendant. Despite apologizing for this error, in that same reply brief Plaintiffs disregarded their page limit as set by the local rules by more than four pages. *See* Civ. L.R. 7(f) ("[R]eply briefs must not exceed 15 pages (excluding any caption, cover page, . . . and signature block). No memorandum exceeding the page limitations may be filed unless the Court has previously granted leave to file an oversized memorandum."); *see generally* ECF No. 23 (consisting of 20 pages, including the caption and signature block).

While the Court will consider Plaintiffs' class certification motion on the merits, rather than outright denying it for failure to comply with its protocols, it warns Plaintiffs that any future failure to comply with its protocols will be more strictly addressed. A motion filed without certification of a corresponding meet and conferral will be summarily denied. Further, because Plaintiffs disregarded the local rules and filed an oversized reply brief, the Court will consider only the argument in Plaintiffs' reply up to its allowed limit—here, 15 pages exclusive of the case caption. The Court will not consider any argument beyond that point.

### 3.2.3 Plaintiffs' Failure to Support Their Motion with Anything Beyond Pleadings

Defendant also argues that Plaintiffs' motion should be denied because they have failed to meet their burden in establishing that their proposed class meets the prerequisites of Rule 23. ECF No. 22 at 8–24. Defendant correctly notes that Plaintiffs moved for class certification before Defendant even answered their amended complaint and provided no evidence to support any of the amended complaint's allegations. *See id.* Plaintiffs reply by implying that Defendant asks the Court to improperly delve into the merits of their underlying claims, rather than merely the Rule 23 prerequisites and that "Plaintiffs have put forth sufficient evidence to merit certification of their claims as a class action . . . ." ECF No. 23 at 4–5.

The Court finds it unnecessary to delve into each of the elements of class certification and each of the parties' corresponding arguments, because it finds this one issue to be fatal to Plaintiffs' motion: Plaintiffs provide nothing beyond the pleadings to support that WDOC has a policy—be it official or unofficial—concerning how it responds to GPS device tampering alerts for offenders on supervision on weekends and holidays. This alleged Policy is the crux of their entire case. Indeed, the common question that they assert predominates such that class certification is appropriate is that all putative class members are "subject to the same [P]olicy [regarding how WDOC responds to GPS device tampering alerts on the weekends] and are at risk of suffering the same harms—*i.e.*, being subject to a parole hold solely due to a malfunctioning GPS device and not due to any untoward actions on their part." ECF No. 13 at 6.

Because Plaintiffs moved to certify their proposed class before Defendant even answered the amended complaint, and certainly before any

discovery was initiated or received in this case, the Court has no way of ascertaining whether the existence of such a Policy will be factually disputed. Whether such a Policy exists will certainly affect the viability of Plaintiffs' proposed class claim and how the Court analyzes all the additional questions of fact and law. By not providing any evidence of the Policy, Plaintiffs have failed to support their claim that a common question predominates. *See In re Allstate Corp. Sec. Litig.*, 966 F.3d 595, 603 (7th Cir. 2020) ("The requirements for class certification are not merely pleading requirements. Parties seeking class certification must prove that they can actually satisfy them." (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) and *Messner*, 669 F.3d at 811)); *Eddlemon v. Bradley Univ.*, 65 F.4th 335, 341 (7th Cir. 2023) ("At the class certification stage, . . . the [C]ourt 'must walk a balance between *evaluating* evidence to determine whether a common question exists and predominates, *without weighing* that evidence to determine whether the plaintiff class will ultimately prevail on the merits." (quoting *Ross v. Gossett*, 33 F.4th 433, 442 (7th Cir. 2022))). Accordingly, the Court will deny Plaintiffs' motion to certify a class without prejudice and order that the parties meet and confer and submit a new joint Rule 26(f) plan. The Court will thereafter set a deadline for any renewed motion for class certification, along with other relevant deadlines for this litigation, in a separate scheduling order.

4.     **CONCLUSION**

For the reasons stated herein, the Court will deny Defendant's motion to dismiss or, in the alternative, transfer this case, ECF No. 14. It will further deny without prejudice Plaintiffs' motion to certify their putative class, ECF No. 13.

Accordingly,

**IT IS ORDERED** that Defendant Grace Knutson's Motion to Dismiss, or in the alternative, to Transfer, ECF No. 14, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiffs Sean Robillard and Sara Domres' Motion to Certify Class, ECF No. 13, be and the same is hereby **DENIED without prejudice**; and

**IT IS FURTHER ORDERED** that the parties submit a new joint Rule 26(f) plan on or before **July 30, 2025**.

Dated at Milwaukee, Wisconsin, this 9th day of July, 2025.

BY THE COURT:

_____

J. P. Stadtmueller
U.S. District Judge